**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **CRIMINAL NO.  06-346 (ES)** |
| | : | |
| **ANTHONY WINSLOW** | : | **Next Date:     June 19, 2008** |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

<u>**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Memorandum in Aid of Sentencing.  In support thereof, the United States respectfully states the following:

<u>**Background**</u>

1.     The facts of this case pertaining to this plea agreement are set forth in the proffer of evidence signed by defendant Winslow on May 2, 2007, and filed with the Court.  We summarize them briefly herein.

2.     On May 17, 2001, and February 28, 2002, defendant Winslow was convicted of Possession With Intent to Distribute Cocaine, and Possession With Intent to Distribute Cocaine and Marijuana in the District of Columbia Superior Court, Case Nos. 2001FEL001876 and 2001FEL005157, respectively.

3.     In summary, in or about November 4, 2006, at about 9:00 p.m., Metropolitan Police Department's (MPD) Auto Theft Unit and the Falcon Helicopter Unit pursued, at a high rate of speed, with lights and audible sirens, along with a helicopter spot light, a vehicle driven by defendant

Winslow, which was thought to be involved in an armed car jacking in Prince George's County, Maryland.[1]  At some point during the pursuit, defendant Winslow stopped the vehicle in the 4600 block of A Street, S.E., in the District of Columbia, he then exited the vehicle, fled on foot, and entered a row house located at 4654 A Street, S.E., in the District of Columbia.  At the time that MPD officers entered the 4654 A Street house, other MPD officers located a loaded 9mm Ruger P95, in plain view, on the driver's seat of the vehicle that defendant Winslow was seen driving.[2]  Defendant Winslow was placed under arrest, and he was subsequently charged with Unlawful Possession of a Firearm by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § § 922 (g)(1) and 924 (a)(2).

## Statutory Penalties

4.     Pursuant to 18 U.S.C. §§ 922 (g)(1) and 924 (a)(2), defendant Winslow faces a maximum sentence of 10 years of imprisonment, a term of supervised release of not more than 3 years, a fine of not more than $250,000, and a special assessment of $100.  See PSR ¶ 3.

## Sentencing Guidelines

5.     The Federal Sentencing Guidelines calculation embodied in the Presentence Report places the defendant's base offense level at 24.  See PSR ¶ 21.  The PSR also allows a four-point increase as a specific offense characteristic for the obliterated serial number on the 9mm Ruger.  See PSR ¶ 22.  The PSR also correctly affords the defendant a three-point reduction in his guidelines calculation for acceptance of responsibility, which diminishes his total offense level to 25.  See PSR

---

[1]The vehicle that the defendant was driving was later determined to **not** be involved in the armed car jacking in Prince George's County, Maryland.

[2]Another individual was inside of the vehicle with defendant Winslow at the time of the police chase.

2

¶ 28.  The PSR calculates the defendant's criminal history score as 10, and the criminal history category as V.  See PSR ¶ 38.  The total offense level therefore is 25, and the Guidelines range for the defendant is 100 to 125 months of imprisonment.  See PSR ¶ 79.[3]

### Sentencing Recommendation

6.      The government recommends that the Court sentence defendant Winslow at the high-point of the Guidelines range that this Court deems appropriate, in this case.[4]  The government also recommends a $4,130.56 fine, and a special assessment of $100.

7.      When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  See Gall v. United States, 128 S. Ct. 586 (2007).  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. §3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

---

[3] We believe that the Guidelines range is accurate; however, on May 2, 2007, the Government and the defendant agreed that although the Guidelines range indicated in the July 30, 2007, PSR, are reasonable and appropriate, the parties also agreed that defendant Winslow may seek, without government opposition, a sentence, which is four levels below the Guidelines range in order to compensate for the enhancement pursuant to § 2K2.1(b)(4).

[4] If defendant Winslow seeks such a sentence outside of the Guidelines range, and this Court finds that that range is appropriate, the government would recommend the high-point of that Guidelines range.  If defendant Winslow does not seek such a sentence, outside of the Guidelines range, and this Court finds the PSR Guideline range is appropriate, the government would request the high-point of the recommended Guidelines range.

8.      In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1).  <u>Booker</u>, 125 S. Ct. at 756.  Nonetheless, the Court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  <u>See</u> <u>Gall</u>, at 590 ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").  The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.  <u>See</u> <u>Rita v. United States</u>, 127 S. Ct.2456 (2007); <u>see</u> <u>also</u> United States Sentencing Comm'n, <u>Supplementary Report on the Initial Guidelines and Policy Statements</u> 16-17 (1987); <u>see</u> <u>also</u> 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases").  In addition, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns."  <u>Booker</u>, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

9.      The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a).  Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by

§ 3553(a)(1).  The Guidelines themselves thus seek to implement – in a fair and uniform way – the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in <u>Gall</u>.  <u>See</u> <u>Gall</u>, at 590.

10.     The government submits that the advisory Guideline calculations set forth in the PSR are accurate; however, the government takes no position with respect to the defendant's anticipated request that the Court calculate the Guideline range without applying § 2K2.1(b)(4).  We recommend that this Court impose a sentence at the highest point of the Guidelines range that this Court deems appropriate.  The government submits that this recommendation at the highest point of the Guidelines range is reasonable, considering, among other things, that defendant Winslow's illegal conduct represents a real and present danger to the community.

In this case, defendant Winslow not only possessed a loaded 9mm Ruger semi-automatic pistol, but he also failed to surrender to authority, and led the police on a dangerous high speed chase through the streets of the District of Columbia.   Considering gun violence is the source of a large amount of crime in this City, and of violence against its citizens, and the fact that he knew he was not legally entitled to have a gun, the defendant's conduct here is serious.   It is vital that the Court send a message to both the defendant and the community that the illegal possession of guns will not be tolerated.  Moreover, defendant Winslow has a serious criminal history, which includes, two Possession with Intent to Distribute Cocaine and Marijuana convictions.  Furthermore, defendant Winslow's institutional and probation adjustment had been poor.  Defendant Winslow continually failed to report to his designated officer; he tested positive for illegal substances, and when given the opportunity to enter a treatment program, he failed to complete the program; the defendant introduced illegal substances into a prison institution; and when given the opportunity to obtain his

General Equivalency Diploma, he failed to show up to class. Defendant Winslow's criminal history, both arrests and convictions, along with the institutional and release infractions, all indicate to the government that the defendant has a problem with authority and he has trouble following orders.

12.     It should also be noted that defendant Winslow has already received a substantial benefit for his early acceptance of responsibility. Specifically, defendant Winslow received a three-point decrease in his offense level under the Guidelines. Accordingly, pursuant to defendant Winslow plea agreement, he has already received all the leniency he should receive. Sentencing defendant Winslow at the high-point of the Guidelines range would serve the interests of the community, and be consistent with the goals set forth in 18 U.S.C. § 3553.

## CONCLUSION

WHEREFORE, based upon the above, and the information reflected in the Presentence Report, the United States respectfully recommends a sentence, at the high-point of the Guidelines range that this Court deems appropriate in this case.

Respectfully,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498610


By: _____/s/_____
RHONDA L. CAMPBELL
ASSISTANT UNITED STATES ATTORNEY
D.C. Bar Number 462402
United States Attorney's Office
555 Fourth Street, N.W., Room 4239
Washington, D.C. 20530
Phone: (202) 514-9519
rhonda.campbell@usdoj.gov