**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 06-346 (EGS)** |
| | : | |
| **ANTHONY WINSLOW** | : | |
| | : | |
| **Defendant.** | : | |

---

### MEMORANDUM IN AID OF SENTENCING

Defendant Anthony Winslow, through counsel, respectfully submits the following Memorandum in aid of his sentencing.

On or about May 2, 2007, Anthony Winslow pled guilty to Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C § 922(g)(1). Sentencing is currently scheduled on August 13, 2008.

**I.    ADVISORY GUIDELINE CALCULATION / COUNSEL'S RECOMMENDATION:**

According to the Pre-Sentence Report (PSR) prepared by the United States Probation Office, Mr. Winslow's Total Offense Level is 25 and his Criminal History Category is V under the United States Sentencing Guidelines (U.S.S.G.). However, under the plea agreement, the parties agreed that defense counsel would argue that a 4 level downward adjustment is appropriate in this case, and that the government would not oppose that request.[1]  See plea agreement at ¶ 7; and Plea Transcript at

---

[1]  As noted in the United States' Supplemental Memorandum In Aid of Sentencing, due to a change in government counsel, there was some confusion regarding the terms of the plea agreement.  As a result, the government's initial sentencing memorandum contained certain

p. 24.  With this adjustment, Mr. Winslow's offense level should be treated as 21, and the resulting

70 to 87 month guideline range should be accepted as the appropriate starting point for purposes of

sentencing.  In its supplemental sentencing memorandum, the government has further stated that it

does not oppose a sentence at the low end of the range (i.e. a sentence of 70 months).

　　　In this Memorandum, defense counsel also suggests that, pursuant to 18 U.S.C. § 3553(a),

a sentence below 70 months is warranted.  Specifically, in light of  Mr. Winslow's background,

including the difficult obstacles he has had to overcome as a child; the mitigating circumstances

relating to the offense conduct; and his demonstrated need and potential for rehabilitation, and the

likelihood that a 60 month sentence will give Mr. Winslow a better chance for the 500 hour RDAP

program,  counsel is respectfully requesting a sentence of imprisonment which is only 10 months

below the unopposed sentencing range, followed by supervised release with appropriate conditions.

Counsel submits that such a sentence, which addresses the need for drug treatment conditions, is

---

representations which were inconsistent with the agreement between the parties regarding the
proposed appropriate sentencing range.  For example, in paragraph 10 and footnote 4 of the
initial sentencing memorandum, the government erroneously advised the Court that it took no
position regarding the appropriate range, and recommended a possible sentence in a guideline
range which was different than the range the government had agreed not to oppose.   After
undersigned counsel advised government counsel regarding the problem, a supplemental
sentencing memorandum was filed by the government attempting to rectify the problem.

　　　Nevertheless, in light of the confusion created by the government's sentencing
memoranda in this case, counsel is attaching the transcript of the plea proceeding before
Magistrate Judge Kay because it demonstrates the unambiguous intent of the parties at the time.
[See, 02/13/07 Transcript].  Specifically,  the government made clear that the parties had "agreed
that the defense would argue for a sentence which is four levels below the [applicable] guideline
range  .  .  .  .  And the government would not oppose that argument by the defense." [See, Plea
Transcript at p. 24].  Thus the government clearly agreed to advise the Court that it does not
oppose defendant's request for this Court to apply the guideline range associated with offense
level 21 – rather than 25 – as the appropriate starting point for sentencing.  Offense level 21
results in a guideline range of 70 to 87 months.

both reasonable and appropriate in this case.


## ARGUMENT

## II.     THE POST-BOOKER SENTENCING FRAMEWORK.

_____Under Justice Breyer's majority opinion in <u>Booker</u>, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. <u>See</u> 18 U.S.C. § 3553(a)(4)." <u>United States v. Booker</u>, 125 S.Ct. 738 (2005). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in <u>Booker</u> held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to <u>Booker</u>, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

_____Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in <u>Booker</u> – sentencing courts should consider the need for the sentence imposed:

(A) to reflect the seriousness of the offense, to promote respect

for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

and

(D) to provide the defendant with the needed educational and

vocational training, medical care, or other correctional

treatment in the most effective manner.

_____Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to

3

comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. After Booker, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

More recently, the Supreme Court reaffirmed that the Sentencing Guidelines are merely one factor to be considered by district courts when fashioning a reasonable sentence and that the

Sentencing Guidelines are not to be weighed more heavily than other sentencing factors.  See Rita v. United States, 127 S.Ct. 2456 (2007) and Gall v. United States, 128 S.Ct. 586 (2007).  A sentencing court shall not simply presume that a sentence within the Guideline range is automatically reasonable or that a sentence within the Guideline range is more reasonable than a sentence outside of the Guideline range.  Id..  The sentencing court further shall not presume that a sentence outside of the Guidelines range is unreasonable.  Id..  By considering the Sentencing Guidelines along with all of the factors set forth 18 U.S.C. § 3553(a), "the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure."  Rita at 2465.  It is critical for sentencing courts to consider all sentencing factors and to not give undue weight to the Sentencing Guidelines because, as the Supreme Court recently reemphasized, '[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'  Gall at 598 (quoting Koon v. United States, 518 U.S. 81, 113 (1996)).

III.    **A SENTENCE OF 60 MONTHS IS JUST AND  REASONABLE IN THIS CASE.**

   A.    **Background / Defendant's History and Characteristics**

Mr. Winslow was born in the District of Columbia and he was raised in the Washington, D.C. metropolitan area.  PSR, ¶¶ 45 & 47.  Mr. Winslow has unfortunately lived a 'rough life.'  PSR, ¶ 51.  From the very beginning, Mr. Winslow's life was marred with instability and neglect.  At the time of Mr. Winslow's birth, his mother was only fifteen years of age, and she now acknowledges that "she could not provide for him" and that she knew 'nothing about [rearing] a child.'  PSR, ¶ 50.

Mr. Winslow lived with his mother only until he was about three years old.  Id..  From age three to about age twelve or fourteen, due in part to the three years incarceration of Mr. Winslow's mother, Mr. Winslow was tragically shuffled around between various households.  Mr. Winslow's mother recalls that, during this period, Mr. Winslow resided with two aunts, a family friend, and various foster care homes.  PSR, ¶ 50.  Mr. Winslow also recalls living with his grandmother during this time.  PSR, ¶ 47.

Although Mr. Winslow returned to living with his mother during his teen years, his father has largely been absent from his life.[2]  PSR, ¶ 47.  This absence, according to Mr. Winslow's mother, 'damaged' her son's life.  PSR, ¶ 51.  Mr. Winslow has always been saddened by the absence of his father from his life, and he "believes that his life would have been different had his father played an active part in his upbringing."  PSR, ¶ 47.  Sadly, Mr. Winslow made efforts to establish a relationship with his father but was unsuccessful, which only exacerbated his frustrations.

In light of the tremendous instability in Mr. Winslow's family life, and the neighborhood influences he was exposed to on a daily basis, he understandably began abusing drugs and alcohol during his teenage years.  Mr. Winslow began daily use of marijuana at about the age of fifteen and he began consuming alcohol at age sixteen.  PSR, ¶¶ 57 & 58.  Mr. Winslow also began experimenting with phencyclidine (PCP) by the time he was seventeen.  PSR, ¶ 60.  As a young adult, Mr. Winslow has also had issues with the use of amphetamines and cocaine.  PSR, ¶¶ 59 & 62.  Mr. Winslow has now suffered from a substance abuse problem for much of the past ten years.

Without a doubt, Mr. Winslow's addiction to drugs and alcohol has had a detrimental impact in his life.  Substance abuse problems have been a contributing factor in virtually all of his contacts

---

[2]Mr. Winslow's father was incarcerated during much of Mr. Winslow's youth. PSR, ¶ 47.

with the criminal justice system. He simply never had a chance. The history of family instability and abandonment made it easy for Mr. Winlsow to turn to drugs, and difficult to stop. In addition, his history of substance abuse has desensitized him regarding the criminal lifestyle associated with substance abuse. As a result, he has found himself in jail a disproportionate amount of time in his life. The one thing that is clear in Mr. Winslow's case is that he is in need of substance abuse treatment and counseling. Significantly, for the first time in his life he has begun to recognize the problems his substance abuse has caused him, and he seems ready to address the problem. He is interested in the RDAP (500 hour) drug program offered by the BOP at some of its facilities. He realizes that he will not get any reduction of his sentence for completing the program. Nevertheless, he is requesting a recommendation for the program, with the hope that he can reap the personal benefits from completing the program.

The tremendous instability Mr. Winslow endured growing up has also adversely impacted his educational experiences. He was forced to change schools many times, which often causes self-esteem and adjustment problems. Amazingly, despite the significant amount of instability and neglect he endured throughout his entire life, Mr. Winslow managed to complete the 11th grade at a high school in Maryland. PSR, ¶ 66, and then he transferred to a school in the District of Columbia where he took some classes for his senior year. Id. Mr. Winslow recognizes the importance of education, and he has made efforts during the pendency of this case to try to obtain his GED. He has been trying to take advantage of the educational resources available at CTF. He has been on the waiting list for the GED course, and has taken some practice tests in preparation for the GED. Mr. Winslow seems committed to furthering his education when he is designated to a Bureau of Prisons (BOP) facility.

Mr. Winslow also has some employment history and he has developed some significant skills that he will be able to draw on. Mr. Winslow was able to obtain summer employment in 1994 and 1995. In 1994, Mr. Winslow worked as a children's aide at the Benning Heights Recreation Center. PSR, ¶ 74. In 1995, Mr. Winslow worked as a secretary's assistant at Walter Reed Army Hospital. PSR, ¶ 73. During the year of 2005, Mr. Winslow was employed in the home improvement field with Expert Images. PSR, ¶ 70. Over the years, Mr. Winslow has developed skills in the areas of home improvement, electronics, plumbing, and carpentry. PSR, ¶ 67. Mr. Winslow has advised his counsel that he hopes to be able to use those skills to obtain employment when he is eventually released from prison.

Mr. Winslow has overcome a very difficult childhood, and has developed stronger family relationships in recent years, particularly with his mother. In spite of the many obstacles he faced because of his mother's drug addiction and incarceration, he has become very close to her. He understands that she is his closest family and has worked to build a good relationship with her. He considers her to be his "best friend". PSR, ¶ 47. To Mr. Winslow's credit, he does not blame his mother for his troubles. Instead, he puts the blame squarely on his shoulders - an approach which bodes well for his continuing rehabilitation. Although he has become closer to his siblings, he now understands that just because they are family they are not necessarily entitled to unconditional love or support. He now understands that he can not allow them to become negative influences in his life, like they did when he was trying to do better prior to his arrest in this case. [3] PSR, ¶ 46. However,

---

[3] Counsel would also note that his relationship with his siblings was a problem for him in certain respects. At the time of the offense in this case, Mr. Winslow was on probation. He was trying hard to find work and avoid any involvement with drugs. For the most part he was doing the right thing - going to job fairs, putting in job applications, and remaining in compliance with his probation conditions. Unfortunately, some of his family members were involved in illegal

most importantly, Mr. Winslow is developing a positive relationship with his six year old daughter. PSR, ¶ 49. Mr. Winslow was trying to be a good father to his daughter, and visited her frequently prior to his recent incarceration. Id.. Even though he is currently incarcerated, that relationship has continued to grow. Mr. Winslow's daughter has visited him regularly. Although somewhat conflicted about whether she should be permitted to visit him in jail, Mr. Winslow made the decision to continue to grow their relationship - a decision which has helped them bond, and helped him mature and grow over the past year. That growth and maturity has enabled him to better understand the consequences of his misconduct, and the affect further misconduct will have on his relationship with his mother and his daughter.

Mr. Winslow, as his mother described him, seems to be " a good person who had a 'rough life.'" PSR, ¶ 51. As Mr. Winslow's mother also noted, it would probably benefit Mr. Winslow and his daughter if he could be home with her sooner, rather than later. Finally, his mother correctly notes that he is in need of educational and vocational training, counseling, and other rehabilitative services, which counsel submits should be an important component of the sentence.

### B.     Substance Abuse Issues / Rehabilitative Needs

Mr. Winslow's substance abuse problem is probably the single most significant factor in his developmental troubles, and has been at the heart of his repeated criminal problems. Over the past

---

activities, which put him in an environment which was not always conducive to his rehabilitation. In fact, most of the charges in this case stemmed from the seizure of items attributable to those individuals, not Mr. Winslow, which is the reason the government agreed to dismiss those charges. Counsel believes that Mr. Winslow has dealt with those problems in a positive way, and that he now better understands his obligation to make tough choices and to live right, even if it means turning his back on his siblings. He recognizes that he allowed himself to be around people who were not living right, and that he can not repeat that mistake when he comes home this time.

year he has begun to understand how the substance abuse lifestyle has been impairing his judgment. In short, he stands to benefit greatly if he is able to take advantage of the Residential Drug Abuse Program ("RDAP") offered by the Bureau of Prisons, the "500 hour" drug program which has significantly reduced recidivism rates for those participants.    In fact, the need for drug rehabilitation and Mr. Winslow's desire to be afforded an opportunity to participate in an RDAP program are the primary factors driving counsel's sentencing recommendation.  It is counsel's hope that a 60 month sentence will make him eligible for a lower level security classification, which may increase his chances to be accepted in and transferred to a facility with an RDAP program, notwithstanding the gun possession in this case. [4]

### C.    Mitigating Factors.

While Mr. Winslow does not make any excuses for his offense conduct, and recognizes that it was a huge mistake in judgment, counsel feels it is important to note that there were some mitigating circumstances which led to his involvement in the offense.  Prior to Mr. Winslow's arrest, his girlfriend had reported an incident of rape, which had not been prosecuted by Prince George's County authorities. She was suffering from anxiety  and panic attacks and apparently helped  Mr. Winslow obtain the gun so they could carry it in their vehicle.  She indicated that it made her feel safer, and that it reduced her anxiety and panic attacks.  His girlfriend has repeatedly confirmed that she was largely responsible for him possessing the gun  for defensive purposes.  Counsel recognizes that this explanation is not a defense to the charges, and could have led to a dangerous situation. Nevertheless, Mr. Winslow was not involved with illegal drugs at the time, was not possessing the

---

[4]    While he can not get a sentence reduction for completing the program, he is still eligible for the program, and is more likely to be considered if his sentence is 60 months or less.

10

gun to further illegal drug activity, or any other criminal activity for that matter.  Counsel submits that these facts are somewhat mitigating, and  differentiate Mr. Winslow's offense from many of the gun offenses prosecuted in this court - a factor which should be considered in determining the length of the sentence necessary to effectuate the goals of sentencing in this case.

> **D.**    **18 U.S.C. § 3553(a) Factors**.

A sentence of 60 months imprisonment, followed by supervised release, will more than adequately reflect the seriousness of the offense under all the circumstances in this case.  See 18 U.S.C. § 3553(a)(2)(A).  Mr. Winslow's offense is a non-violent offense and he seriously regrets having any involvement in this offense.  Mr. Winslow foolishly justified having the weapon because his girlfriend was a rape victim, and was having panic attacks.  The presence of the weapon gave her a sense of security and calmed her.  His girlfriend confirmed that the weapon was carried in the vehicle for that purpose, and that it did make her feel more at ease.  Mr. Winslow never stopped to realize that having the gun could just as easily create a danger by increasing the chance that he could become involved in some unanticipated violence.

Importantly, Mr. Winslow has learned a valuable lesson without hurting anyone except himself.  He will have to serve a significant prison sentence for his misjudgment, and will face a probation revocation hearing as well.  He has spoken at length to counsel about the lessons he has learned.  He understands that he must leave his old habits, friends, and values behind.  It is not good enough to be free of drugs, seeking employment, and reporting to a probation officer as directed.  He knows he must obey all laws and avoid people who do not understand that message, even if they are relatives.  While there is no real excuse for having the gun, he was motivated to protect his girlfriend, and apparently agreed to keep the gun in the car at her urging.  Mr. Winslow has accepted

responsibility for his conduct, and continues to demonstrate that he is determined to live a productive and law abiding life in the future.   Therefore, the requested 60 month sentence will adequately reflect the seriousness of Mr. Winslow's offense; promote respect for the law; and provide just punishment for the offense.  See 18 U.S.C. § 3553(a)(2)(A).

A 60 month sentence is a significant sentence of imprisonment.  It is not a mere slap on the wrist, particularly since Mr. Winslow's guilty plea will subject him to a parole revocation hit for the same offense conduct.   Further,  because Mr. Winslow will be required to be on supervised release under the guidance and supervision of the United States Probation Office following his imprisonment, Mr. Winslow knows he will be subject to further incarceration if he violates any condition of his supervision.

Counsel would also remind the Court that Mr. Winslow experienced a significant hardship while in jail pending sentencing.  His brother died, and he was unable to attend either the wake or the funeral.  He felt like he let his brother and his family down because he was unable to be there for them.  It hurt him deeply, and seemed to strike a chord.  Mr. Winslow wants to regain control of his life, so he can and will be there for his family in the future.  For these reasons, the requested sentence seems more than sufficient punishment to deter Mr. Winslow from any further crimes.  18 U.S.C. § 3553(a)(2)(C).   In addition, such a sentence is sufficient to send the right message to the community, and to  deter others from committing similar crimes.   See 18 U.S.C. § 3553(a)(2)(B).

Counsel submits that the defense recommendation in this case takes in to account the anticipated benefit defendant will get from the educational and vocational training at the BOP,  See, 18 U.S.C. § 3553(a)(2)(D);  as well as the quality substance abuse treatment, which he can begin in the BOP and continue under the supervision of the Probation Department.  A sentence of 60 months,

which is slightly below the unopposed appropriate sentencing range, will  increase Mr. Winslow's chances of being considered by the BOP for one of the RDAP  programs, and will provide the type of hope which can help jump start his needed rehabilitative efforts, and permit him to take a positive approach to his time in prison.   Thus the requested 60 month sentence would seek to provide needed substance abuse treatment in the most effective manner, thereby  providing the proper balance between the need for treatment, and the need to consider punishment and the other statutory sentencing factors.

### E.    Conclusion.

In summary, consideration of the totality of the circumstances of this case supports a finding that the requested 60 month sentence is sufficient, but not greater than necessary, to accomplish the enumerated goals of sentencing.  Mr. Winslow endured a difficult upbringing and he was exposed to drugs and alcohol at a young age.  Clearly, Mr. Winslow's abuse of drugs in particular has contributed to his unlawful behavior.  Since his arrest in this case, Mr. Winslow has accepted responsibility for his conduct and he has demonstrated a desire to make positive changes in his life. With his skills, Mr. Winslow can become a productive member in the community.  Mr. Winslow has shown that he is trying to be a responsible parent to his  young daughter.  Mr. Winslow is at the stage of his life where he is eager to move forward and make the necessary changes in his life.  A 60 month sentence is serious punishment; fairly recognizes the mitigating circumstances that led to the offense conduct; and balances the need for punishment with the need for rehabilitation.  In addition, such a sentence is a sentence of hope - one which will encourage Mr. Winslow to continue his rehabilitative efforts, and will send a message encouraging other such offenders to accept responsibility and seek rehabilitation.  Thus counsel submits that the requested sentence is fair, just, and proportionate under

all the circumstances in this case.

Wherefore, for the reasons discussed above, counsel respectfully urges the Court to impose a sentence of 60 months imprisonment with a recommendation for placement in the RDAP "500 hour" drug program, impose a period of supervised release with substance abuse aftercare and any other conditions the court deems appropriate. Counsel further urges the Court to recommend a BOP designation in the Mid-Atlantic area.

Respectfully submitted,
A.J. Kramer
Federal Public Defender

_____/s/_____
Tony W. Miles
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - -x
                      :
UNITED STATES OF AMERICA    :
                      :
    vs.              :  Criminal No. 06-0346
                      :
ANTHONY D. WINSLOW      :
                      :
      Defendant     :
                      :  Washington, D.C.
- - - - - - - - - - - - - -x  February 13, 2002

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE ALAN KAY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:      ANGELA HART-EDWARDS, ESQ.
                       Assistant United States Attorney

For the Defendant:       TONY W. MILES, ESQ.
                       Federal Public Defender Service

                       HOWARD KATZOFF, ESQ.

**Proceedings recorded by the Court, transcript produced by Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307, Washington, D.C. 20005, 202-347-5395, www.pro-typists.com**
M2513/bf

```
1                        P R O C E E D I N G S

2              THE CLERK:   Criminal Case Number 2006-346,

3    the United States of America versus Anthony D. Winslow.

4    Angela Hart-Edwards representing the Government; Tony

5    Miles representing the Defendant, Howard Katzoff is

6    advisory counsel for the Defendant.   The Defendant is

7    present in the courtroom.   This is a plea hearing.

8              Mr. Winslow, would you please stand and raise

9    your right hand.

10             (Whereupon, the Defendant was duly sworn.)

11             MS. HART-EDWARDS:   Your Honor, may I address

12   the Court?

13             THE MAGISTRATE JUDGE:   Yes, Ms. Hart-Edwards.

14             MS. HART-EDWARDS:   I just wanted to let the

15   Court know that the agreement sent to the Court, there's

16   one paragraph that it's not the right agreement.

17   Everything is right except for paragraph number 7.

18             THE MAGISTRATE JUDGE:   Number 7?

19             MS. HART-EDWARDS:   Yes.   And I have a copy of

20   the final agreement that the parties entered into.

21             THE MAGISTRATE JUDGE:   Well, I have -- well.

22             MR. KATZOFF:   The executed copy is the correct

23   one.

24             MS. HART-EDWARDS:   Yes.   The executed copies of

25   the --
```

1          THE MAGISTRATE JUDGE:  Executed yesterday,

2   Ms. Hart-Edwards, correct?

3          MS. HART-EDWARDS:  Actually, executed today.

4          THE MAGISTRATE JUDGE:  Well, I don't know --

5          MS. HART-EDWARDS:  Today by all of the --.

6          THE MAGISTRATE JUDGE:  That's what was given to

7   me.  Why don't you look at that and see if that's the --

8          THE CLERK:  I think they're saying this is the

9   correct one, the one that was faxed to you.

10          THE MAGISTRATE JUDGE:  The one that was faxed

11   to me --

12          THE CLERK:  That's right.

13          THE MAGISTRATE JUDGE:  -- was not and --

14          THE CLERK:  That's right.

15          THE MAGISTRATE JUDGE:  And that's the one on

16   page --

17          MS. HART-EDWARDS:  Number 7, paragraph number 7.

18   Is the only --

19          THE MAGISTRATE JUDGE:  Agreements as to

20   sentencing allocution?

21          MS. HART-EDWARDS:  That's correct, Your Honor.

22          THE MAGISTRATE JUDGE:  I see.  So 7 is not

23   correct.

24          MS. HART-EDWARDS:  That's correct.

25          MR. MILES:  Does the Court have before it the

4

1    copy signed by Mr. Winslow?  That one should reflect the

2    correct paragraph.  But when the Court mentioned this

3    document being signed yesterday, I looked at the

4    signature, then you brought to my attention that

5    Mr. Winslow mistakenly signed yesterday's date when he in

6    fact signed today.  I don't know if we need to just put

7    that on the record of if we should --

8          THE MAGISTRATE JUDGE:  I have no problem with

9    that.  As long as he acknowledges that it was his

10    signature.

11          MR. MILES:  Okay.

12          THE MAGISTRATE JUDGE:  If he wants to make a

13    pre-emptive strike, that's all right.

14          MR. MILES:  I just wanted to make that clear.

15          THE MAGISTRATE JUDGE:  It's not a problem.

16          MR. MILES:  Okay.

17          THE MAGISTRATE JUDGE:  So it's a new 7, I think,

18    is that correct?

19          MS. HART-EDWARDS:  That's correct, Your Honor.

20          THE MAGISTRATE JUDGE:  All right, very well.

21    What I'm trying to locate, counsel, is what Mr. Winslow

22    anticipates pleading to.  Was that an indictment -- a

23    single count in the indictment or an information?

24          MS. HART-EDWARDS:  That's correct, Your Honor.

25          MR. MILES:  Yes.

1          MS. HART-EDWARDS:  Would you like a copy of the

2  indictment?

3          THE MAGISTRATE JUDGE:  Well, it should be in the

4  jacket, Ms. Hart.  It's just a matter of me trying to

5  locate it.  And my trusty Courtroom Deputy has indicated

6  it, but I didn't realize it.  Okay.  I'm all set, thank

7  you.

8          MR. MILES:  Would you like Mr. Winslow to come

9  forward, Your Honor?

10          THE MAGISTRATE JUDGE:  Yes.  You've called the

11  case, and sworn the --

12          THE CLERK:  Yes, I have.  Yes, I have, Your

13  Honor.

14          THE MAGISTRATE JUDGE:  All right.  Mr. Winslow,

15  the Court understands that you wish to enter a plea of

16  guilty to the indictment that was filed on November

17  the 30th of last year, charging you with violation of

18  Title 18, United States Code, Section 922(g)(1), unlawful

19  possession of a firearm and ammunition by someone who has

20  been previously convicted of a crime punishable by

21  imprisonment for a term exceeding one year.

22          Is that correct, sir?

23          THE DEFENDANT:  Yes.

24          THE MAGISTRATE JUDGE:  All right.  Now,

25  Mr. Winslow, the Court is going to be asking you some

1    questions.  The Court is also going to be explaining

2    certain of your rights that you have that you will have to

3    waive before this Court is going to permit you to enter a

4    plea of guilty.  So it's very important that you

5    understand everything the Court says to you, all right?

6    And if you don't understand anything I say to you, you

7    stop me and tell me that you don't understand.  Is that

8    understood?

9                THE DEFENDANT:  Yes.

10               THE MAGISTRATE JUDGE:  Also, you've been sworn,

11   Mr. Winslow.  That means all questions that I ask of you,

12   you have to answer truthfully.  If you don't answer them

13   truthfully, the Government could bring additional charges

14   of not telling the truth after you have been sworn, and

15   that's called perjury.  So you carefully listen to the

16   questions.  Again, if you don't understand the questions,

17   you stop me and I will try to explain them or have

18   counsel, your counsel, explain it to you.

19               Now, initially I should tell you, as you

20   probably already know, the case is assigned to United

21   States District Judge Sullivan.  Judge Sullivan, if this

22   case were to go to trial, would have been the trial judge.

23   But Judge Sullivan, if I permit you to plead guilty and

24   Judge Sullivan accepts your plea, will be the sentencing

25   judge.  I have nothing to do with the sentencing.  My role

1   is limited to conducting this plea hearing and if, at the

2   end of the hearing, I believe that your plea is

3   voluntarily made and that you fully understood all the

4   consequences of that plea, I will permit you to enter a

5   plea of guilty, Judge Sullivan will then, in all

6   likelihood, based upon my recommendation, accept your

7   plea, and at some later date it will be Judge Sullivan who

8   will imposing the sentence.  I have nothing to do with the

9   sentencing.  Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE MAGISTRATE JUDGE:  But to proceed before me,

12   it's required that you and your, both Mr. Miles and your

13   advisory counsel, Mr. Katzoff, and the Government, consent

14   to me, who I'm a Magistrate Judge and will be conducting

15   the hearing, but you must consent to that.

16          So do I have your consent?  Mr. Miles --

17          MR. MILES:  Yes.

18          THE MAGISTRATE JUDGE:  -- discussed this, I'm

19   sure, with Mr. Winslow?

20          MR. MILES:  Yes, we did.

21          THE MAGISTRATE JUDGE:  All right.  And you

22   agree, Mr. Winslow?

23          THE DEFENDANT:  Yes.

24          THE MAGISTRATE JUDGE:  Mr. Katzoff?

25          MR. KATZOFF:  I certainly agree, Your Honor,

1   although I didn't sign the form.

2            THE MAGISTRATE JUDGE:  Oh, I understand, but

3   your oral agreement will be --

4            MR. KATZOFF:  Very well.

5            THE MAGISTRATE JUDGE:  -- will be accepted.

6   Ms. Hart, on behalf of the Government?

7            MS. HART-EDWARDS:  Yes, Your Honor.

8            THE MAGISTRATE JUDGE:  Very well.  Mr. Winslow,

9   would you state your full and correct name, sir?

10           THE DEFENDANT:  Anthony DiAngelo Winslow.

11           THE MAGISTRATE JUDGE:  Have you taken any

12  medication, alcohol or drugs, both legal and illegal

13  drugs, within the last 24 hours?

14           THE DEFENDANT:  No.

15           THE MAGISTRATE JUDGE:  Are you now under the

16  influence of alcohol or any drugs?

17           THE DEFENDANT:  No.

18           THE MAGISTRATE JUDGE:  Do you know of any reason

19  that you would not be able to understand the proceedings,

20  i.e., this plea proceeding, that will occur here this

21  morning?

22           THE DEFENDANT:  No.

23           THE MAGISTRATE JUDGE:  How far did you go in

24  school, Mr. Winslow?

25           THE DEFENDANT:  Eleventh grade.

1          THE MAGISTRATE JUDGE:  Eleventh grade.

2     Mr. Miles, Mr. Katzoff, Ms. Hart-Edwards, do any of you

3     have any question as to Mr. Winslow's competence at this

4     time to enter a plea of guilty?

5          MR. KATZOFF:  I do not, Your Honor.

6          MR. MILES:  I do not.

7          MS. HART-EDWARDS:  No, Your Honor.

8          THE MAGISTRATE JUDGE:  Very well.  The Court

9     finds that Mr. Winslow is competent to understand the

10    proceedings that will occur here today.

11         Now, have you, Mr. Winslow, had a full

12    opportunity to discuss this case and your plea of guilty

13    with Mr. Miles and Mr. Katzoff?

14         THE DEFENDANT:  Yes.

15         THE MAGISTRATE JUDGE:  And are you fully

16    satisfied with their representation of you?

17         THE DEFENDANT:  Yes.

18         THE MAGISTRATE JUDGE:  Now, as I indicated a few

19    moments ago, I would be explaining certain of your rights

20    that you will have to waive before I permit you to enter a

21    plea of guilty in this case.  Because the plea has to be a

22    voluntary plea, one that you understand and that you enter

23    into voluntarily.  Under the laws and the Constitution of

24    the United States, you're entitled to have a trial by jury

25    in this case on the charges that are contained in the

1    indictment, and that trial would be before United States

2    District Judge Sullivan.  And if there were a trial you

3    would be presumed to be innocent, and before you could be

4    found guilty the Government would be required to prove

5    that you're guilty beyond a reasonable doubt by competent

6    -- that means by admissible evidence.  If there were a

7    trial, the Government would be required to bring in

8    witnesses and they would have to testify in your presence,

9    and Mr. Miles would have an opportunity to cross-examine

10    those witnesses and also object to any evidence offered by

11    the Government prosecutor and also to offer evidence on

12    your behalf.

13         At that trial, you'd have a right to testify on

14    behalf of yourself, but you would also have a right not to

15    testify.  In other words, you cannot be required to say

16    anything.  And if you decided at the trial that you should

17    not testify, or your lawyers advise you that it wouldn't

18    be wise for you to testify, the jury and the judge could

19    not take any inference or suggestion of guilt from the

20    fact that you decided that it would not be in your

21    interest to testify.

22         Now, if the Court permits you to enter a plea of

23    guilty and Judge Sullivan accepts that, you will waive

24    those rights and there will be no trial, and Judge

25    Sullivan will enter a plea of guilty against you.  You

1    understand that?

2            THE DEFENDANT:  Yes.

3            THE MAGISTRATE JUDGE:  Do you understand those

4    rights?

5            THE DEFENDANT:  Uh-huh.

6            THE MAGISTRATE JUDGE:  Now, you should also

7    understand that if you enter a plea of guilty you will be

8    waiving your right under the Constitution not to

9    incriminate yourself.  Under the Constitution, no person

10   who comes into this Court, Federal Court, criminal court

11   or any court, can be forced in any way to acknowledge that

12   they are guilty of any criminal charge.  So if I -- and I

13   will, later on in the plea hearing -- ask you whether or

14   not you committed the charge that the Government has

15   charged you with in that indictment, and if you say yes to

16   that at that time, in fact you will be waiving your right

17   not to incriminate yourself because by admitting to the

18   criminal act you will be incriminating yourself.  So you

19   understand what I'm saying?

20           THE DEFENDANT:  Yes.

21           THE MAGISTRATE JUDGE:  You should also

22   understand that if the Court permits you to enter a plea

23   of guilty and it's accepted, you will waive your right to

24   have Mr. Miles, your counsel, file motions on your behalf,

25   including any motions that would question or challenge the

1  evidence that was taken from you or any statement that you

2  have made.  You will also waive your right to appeal your

3  conviction.  If you enter a plea of guilty and the Court

4  accepts it, you can't, the following day or shortly

5  thereafter, say, "You  know, I'm going to change my mind.

6  I want to go up to the Court of Appeals and appeal that

7  conviction."  Once you enter a plea, Judge Sullivan

8  accepts it, it's a done deal.  Understand that?

9          THE DEFENDANT:  Yes.

10          THE MAGISTRATE JUDGE:  Now.  Having discussed

11  those rights with you, is it still your desire and wish at

12  this time to enter a plea of guilty?

13          THE DEFENDANT:  Yes.

14          THE MAGISTRATE JUDGE:  The Court has before it,

15  Mr. Winslow, a waiver of your right to a trial by jury and

16  a consent to appear before me.  And this appears to have

17  your signature here, Anthony Winslow.  Do you recall

18  signing that document, Mr. Winslow?

19          THE DEFENDANT:  Yes.

20          THE MAGISTRATE JUDGE:  Very well.  The Court

21  will accept the waiver.

22          Now, you've seen a copy of the indictment?  The

23  indictment's a piece of paper that sets forth the charges.

24  Have you seen that?

25          THE DEFENDANT:  Yes.

1              THE MAGISTRATE JUDGE:  The Court is going to

2    read what's contained in the indictment so I'm sure that

3    you have heard it, and also I'm going to ask you if you

4    understand it.  An indictment that was handed down on

5    November 30th of last year, a one-count indictment, the

6    grand jury charged that on or about November the 4th of

7    last year, 2006, within the District of Columbia, Anthony

8    D. Winslow, after having been convicted of crimes

9    punishable by imprisonment for a term exceeding one year,

10   specifically in D.C. Superior Court cases number F1876-01

11   and F1056-04, did unlawfully and knowingly receive and

12   possess a firearm, that is, namely, a Ruger 9-millimeter

13   semiautomatic pistol, and did unlawfully and knowingly

14   receive or possess ammunition, specifically 9-millimeter

15   ammunition, which had been possessed, shipped and

16   transported in and affecting interstate or foreign

17   commerce.

18             Now, this charge is called unlawful possession

19   of a firearm and ammunition by a person convicted of a

20   crime punishable by imprisonment for a term exceeding one

21   year, and it's a violation of Title 18 of the United

22   States Code, Section 922(g)(1).

23             Now, do you fully understand the nature of those

24   charges?

25             THE DEFENDANT:  Yes.

1        THE MAGISTRATE JUDGE:  Do you know what the

2    maximum penalty is, Mr. Winslow, under law for the offense

3    of which you are entering a plea of guilty?

4        THE DEFENDANT:  Yes.

5        THE MAGISTRATE JUDGE:  What is that?

6        THE DEFENDANT:  Ten years.

7        THE MAGISTRATE JUDGE:  Anything else?

8        THE DEFENDANT:  $250,000.00 fine.

9        THE MAGISTRATE JUDGE:  That's correct.

10        THE DEFENDANT:  And a hundred dollar assessment.

11        THE MAGISTRATE JUDGE:  All right.  You're

12    absolutely right.  The maximum -- maximum sentence -- that

13    Judge Sullivan could impose if he accepts your plea of

14    guilty is 10 years imprisonment or -- and a fine, which

15    could not exceed $250,000.00, or both a fine and a period

16    of imprisonment.  And there is a, by law, mandatory --

17    mandatory -- $100.00 special assessment.  And there's no

18    discretion in Judge Sullivan to change that $100.00

19    assessment.  If you enter a plea of guilty, at the time of

20    sentencing that is required by law.

21        There's also a period of supervision, supervised

22    release, up to a maximum of three years that could be

23    imposed by Judge Sullivan.  And if there's any obligation

24    to pay any fine, any interest on that fine could also be

25    required by Judge Sullivan.

1          Now, has anyone promised you in any way what the

2     sentence will be that is imposed by the Court?

3          THE DEFENDANT:  No.

4          THE MAGISTRATE JUDGE:  Now, back in 1984 a law

5     was passed which created a Sentencing Commission, and over

6     the years that Commission has issued guidelines for

7     federal judges to look at and follow in determining what

8     sentence to impose in a criminal case in a federal court.

9     Now, those guidelines used to be mandatory but the Supreme

10    Court has held that they are no longer mandatory, but

11    they're advisory.  That means that Judge Sullivan will

12    have to look at those guidelines and, in all likelihood,

13    will follow those guidelines, but he's not required to

14    follow them.  So I'm pretty sure he will look at them and

15    probably, in all likelihood, sentence you within whatever

16    the guideline, advisory guidelines, recommend.

17          MR. MILES:  Your Honor.

18          THE MAGISTRATE JUDGE:  Yes?

19          MR. MILES:  At this time I probably should make

20    reference to paragraph 7 -- excuse me -- of the plea

21    agreement, and make this clear.  In this case, we have --

22    well, even before paragraph -- in paragraph 5, we

23    calculated the guidelines --

24          THE MAGISTRATE JUDGE:  Right.

25          MR. MILES:  And we believed the total adjusted

1    offense level would be a 25.

2              THE MAGISTRATE JUDGE:  Right.

3              MR. MILES:  But in paragraph 7, we talk about

4    the defense being able to make an argument for a sentence

5    outside the guideline range based on this four-level

6    enhancement for the serial number being obliterated.  And

7    we won't go into the details why, but there's some

8    mitigating evidence surrounding that which is having the

9    Government taking this position.  And not only are we able

10   to seek it, but the Government will not oppose that four-

11   level reduction.

12             THE MAGISTRATE JUDGE:  I understand.

13             MR. MILES:  And if that is the case, then I

14   mean, Judge Sullivan obviously isn't required to follow

15   that, but if he does then we will, in this case, have a

16   sentence outside of the guideline range.

17             THE MAGISTRATE JUDGE:  Yes.  I understand.

18             MR. MILES:  All right, thank you.

19             THE MAGISTRATE JUDGE:  All right.  _____

20   explain.  Now, under the guidelines, as Mr. Miles has

21   indicated, Mr. Winslow, Judge Sullivan has the right to

22   increase or decrease the advisory guidelines, and as has

23   been set forth in the plea agreement, you, through your

24   attorneys, are going to be asking the judge to, in other

25   words, impose a sentence that comes below the Sentencing

1    Guidelines.  The Government has indicated that they will

2    not oppose that request, but that will ultimately be Judge

3    Sullivan's call.  All right?  He can listen and with no

4    opposition by the Government he clearly will give very

5    serious consideration to the recommendation made by you

6    through your counsel and without objection by the

7    Government.

8            Now.  Have you and Mr. Miles and Mr. Katzoff

9    discussed the Sentencing Guidelines and how they might

10   apply to your case?

11           THE DEFENDANT:  Mmm -- _____.

12           THE MAGISTRATE JUDGE:  You've talked about them

13   and what they say and things like that?

14           THE DEFENDANT:  Yeah.

15           THE MAGISTRATE JUDGE:  Yes?

16           THE DEFENDANT:  Yes.

17           THE MAGISTRATE JUDGE:  All right.  Now, as I was

18   saying, Judge Sullivan will not be able to determine what

19   the guideline sentencing range, advisory range, is until

20   after a pre-sentence report has been completed, and you,

21   through your counsel, and the Government will have a

22   chance to look at that pre-sentence report and question

23   anything that's in the report that you don't agree with.

24   And the Government can look the same at the report and

25   also question anything that's contained in that report

1  that they believe to be inaccurate.

2           But it's very important that you understand that

3  Judge Sullivan is the one who determines what the

4  sentencing guideline, albeit advisory, what they are.  So

5  while the plea agreement sets forth what your counsel and

6  perhaps the Government counsel believe to be the

7  appropriate guideline, that does not mean Judge Sullivan

8  is bound by that.  I'm not suggesting he won't adopt the

9  same guideline range, but he ultimately is the decision

10 maker.  All right?  You understand?

11           THE DEFENDANT:  Yes.

12           THE MAGISTRATE JUDGE:  Good.  Now, as I said to

13 you before, after he's determined what the guideline range

14 is, he has the authority under some circumstances and the

15 circumstance that Mr. Miles indicated is a circumstance

16 that would permit him to modify in some way the sentence

17 that is called for by the advisory guidelines.

18           You should also understand that under some

19 circumstances you or the Government may have a right to

20 appeal any sentence that is imposed by Judge Sullivan,

21 unless you have agreed not to appeal any sentence that is

22 imposed.  I don't know, is that agreement in the plea

23 agreement, Mr. Miles?

24           MR. MILES:  Could you repeat that?  I'm sorry.

25           THE MAGISTRATE JUDGE:  Yes.  Whether or not --

1    well.  There would be a right for Mr. Winslow to appeal

2    any sentence that is imposed by Judge Sullivan unless he

3    has waived his right to appeal that.

4            MR. MILES:  There is no appellate waiver in this

5    plea agreement.

6            THE MAGISTRATE JUDGE:  All right.  Remember I

7    said to you, you couldn't appeal your plea of guilty.  But

8    this is different.  You can't appeal your plea of guilty,

9    but if for some reason -- and I'm not suggesting that it's

10   going to happen at all -- Judge Sullivan should impose a

11   sentence that you and your lawyers -- or the Government,

12   for that matter -- thinks is not appropriate under the

13   guideline, then you would have a right to appeal that to

14   the Court of Appeals.  Just the sentence, not the plea of

15   guilty.

16           THE DEFENDANT:  Right.

17           THE MAGISTRATE JUDGE:  You should also

18   understand that in the federal criminal justice system,

19   parole has been abolished.  So if you are sentenced to a

20   period of imprisonment, you would not be released on

21   parole.  Okay?

22           THE DEFENDANT:  Yes.

23           THE MAGISTRATE JUDGE:  As I indicated before,

24   there is a mandatory $100.00 special assessment that will

25   be imposed.

1          Now, the Court is advised and the Court has

2    before it a plea agreement which, on page -- one of the

3    pages towards the end -- the end of paragraph, after

4    paragraph 21, has a paragraph called "Defendant's

5    acceptance," in which that paragraph states that you've

6    read the agreement, discussed it with your attorney,

7    Mr. Miles, that you fully understand the agreement, and

8    then there's your signature, dated yesterday, which I

9    understand was made today.  Do you recall signing that?

10         THE DEFENDANT:  Yes.

11         THE MAGISTRATE JUDGE:  Now, when you sat down

12   with your lawyer, both Mr. Miles and Mr. Katzoff, did you

13   have an opportunity to go through this agreement,

14   paragraph by paragraph?

15         THE DEFENDANT:  Yes.

16         THE MAGISTRATE JUDGE:  Any questions you had,

17   they answered it for you so you understood it?

18         THE DEFENDANT:  Yes, I understood it.

19         THE MAGISTRATE JUDGE:  The Court will accept

20   that as your signature.

21         Now, I'm going to ask Ms. Hart-Edwards, the

22   Government prosecutor, to give a very brief synopsis, a

23   brief statement, as to what's contained in that agreement.

24   I want you to listen very carefully because at the end of

25   that I'm going to ask you if that's what you understand

1    you've agreed to in this plea agreement.

2           Ms. Hart-Edwards?  I think you're going to have

3    to come to the podium so we can pick it up on the tape.

4           MS. HART-EDWARDS:  Yes.  Briefly, Your Honor.

5    On November 4th, 2006, at about 2100 hours --

6           THE MAGISTRATE JUDGE:  You're going to give a

7    synopsis of both the facts, evidence, and the plea.

8           MS. HART-EDWARDS:  Yes, but I -- just covering

9    jurisdiction, that's all.

10           THE MAGISTRATE JUDGE:  That's okay.  You can do

11    both.

12           MS. HART-EDWARDS:  Okay.  Members of the

13    Metropolitan Police Department were operating what's

14    called a theft, Auto Theft Unit, and they were monitoring

15    the 6-D radio zone, where they heard over the broadcast

16    from Prince George's County, police pursuing an SUV.  They

17    heard that broadcast and observed a MPD Falcon helicopter

18    in the area, and then drove to where the helicopter was

19    and observed a vehicle similar to the one described in the

20    broadcast.  They pursued that vehicle and in the 4600

21    block of 8th Street, the vehicle came to a stop and the

22    officers observed two individuals exit the vehicle, one

23    being the Defendant from the driver's side, and another, a

24    female, from the passenger side.

25           The officers pursued both of those individuals

1   on foot, ending up at 4654 8th Street, Southeast, here in

2   D.C.   They went into that residence and ended up arresting

3   the Defendant and the female, both who had exited the

4   vehicle.

5           There were other officers on the scene at the

6   time, and back at the vehicle out of which the Defendant

7   and the female had exited, and what they observed in plain

8   view was a loaded 9-millimeter Ruger P-95 handgun on the

9   driver's seat of that vehicle that the Defendant had been

10  driving.

11          The officers retrieved the firearm and they

12  determined that the serial number had been filed away.

13  The Defendant knew that the firearm and the ammunition

14  were in the vehicle, and he had the requisite intent to

15  possess the firearm and the ammunition.

16          Also, the Defendant had been previously

17  convicted, on March 18, 2002, and April 27, 2004,

18  respectively, of crimes punishable by imprisonment for

19  a term exceeding one year in the District of Columbia

20  Superior Court in Case Numbers 01-1876 and 04-1056.

21          Neither the firearm nor the ammunition were

22  manufactured in the District of Columbia; therefore, they

23  had been transported in interstate commerce at the time of

24  the Defendant's arrest on November 4th, 2006.

25          THE MAGISTRATE JUDGE:   Now, I'm going to ask you

1    for a brief synopsis of what's contained in his plea

2    agreement.

3            MS. HART-EDWARDS:  I'm sorry.

4            THE MAGISTRATE JUDGE:  I'm asking you to give a

5    brief synopsis of what's contained in the plea agreement.

6            MS. HART-EDWARDS:  Okay.

7            THE MAGISTRATE JUDGE:  In other words, what it

8    is that you have agreed to and what Mr. Winslow agreed to.

9            MS. HART-EDWARDS:  Okay.  Your Honor, the

10   Government has -- I'll try from memory here.  The

11   Government made the following plea --

12           THE MAGISTRATE JUDGE:  Would you like a copy?

13   You can go through it, if you're -- Just highlight those

14   areas that --

15           MS. HART-EDWARDS:  In this case, the Defendant

16   agreed to plead guilty to the one count in the indictment

17   charging unlawful possession of a firearm and ammunition

18   by a person convicted of a crime punishable by

19   imprisonment exceeding one year, in violation of 18

20   U.S.C., Codes -- Code, Section 922(g)(1).

21           In exchange for that guilty plea, the Government

22   has agreed that the Defendant would -- well, that the

23   Government would argue that the Defendant receive 3 points

24   for early acceptance of responsibility, and that during

25   allocution that the defense would argue for a sentence

1    below the guidelines, and the parties stipulated or agreed

2    that the total adjusted offense level was 25 in this case.

3    We agreed that the defense would argue for a sentence

4    which is four levels below the guideline range, in order

5    to compensate for the enhancement -- for the obliterated

6    handgun.  And the Government would not oppose that

7    argument by the defense.

8            I believe that essentially summarizes the

9    agreement, would you state, counsel?  Usually, defense

10   counsel gives the summary of the agreement.

11           MR. MILES:  The only thing -- excuse me -- I

12   would add, Your Honor, is reflected in paragraph 3, and

13   that is that in return for Mr. Winslow's guilty plea the

14   Government will not prosecute him for any of the conduct

15   set forth in the statement of offense, as well as for any

16   items that they may have recovered from the residence

17   where Mr. Winslow was ultimately found.

18           MS. HART-EDWARDS:  That's correct, Your Honor.

19           THE MAGISTRATE JUDGE:  There was also agreement

20   that at the conclusion of this plea hearing, that there

21   would be no objection on the part of Mr. Winslow to his

22   being held without bond?

23           MR. MILES:  That is correct.

24           MS. HART-EDWARDS:  That's (inaudible).

25           THE MAGISTRATE JUDGE:  Thank you, Ms. Hart-

1    Edwards.

2                Mr. Miles?  Will you come forward?

3                Well, Mr. Winslow, you've heard Ms. Hart-Edwards

4    and your attorney give a very brief summary of what's

5    contained in the plea agreement.  Is that your

6    understanding of what's in the agreement?

7                THE DEFENDANT:  Yes.

8                THE MAGISTRATE JUDGE:  Yes.  Has anyone

9    threatened you in an way or forced you to enter a plea of

10   guilty in this case?

11               THE DEFENDANT:  No.

12               THE MAGISTRATE JUDGE:  Have you been promised

13   anything other than what's contained in this plea

14   agreement for you to enter this plea of guilty?

15               THE DEFENDANT:  No.

16               THE MAGISTRATE JUDGE:  Now.  You also heard

17   Ms. Hart-Edwards, the prosecutor, give a brief summary of

18   the evidence that would have been introduced if this case

19   had gone to trial.  And it's called the Statement of the

20   Offense.  I have a copy of it, the Court has a copy, and

21   again, on the last page -- where it's not dated, and it

22   should be dated, so I'm going to give it back to you to

23   date -- it appears to have your signature.  Do you recall

24   signing that --

25               THE DEFENDANT:  Yes.

1          THE MAGISTRATE JUDGE:  -- on the last page of

2   this agreement?

3          Now, this statement of the offense indicates

4   that the police found this weapon, this Ruger, 9-

5   millimeter Ruger, in the SUV that you were driving, is

6   that correct?

7          THE DEFENDANT:  Yes.

8          THE MAGISTRATE JUDGE:  Along with ammunition.

9   And you also acknowledge that you had, prior to this

10  charge, an arrest that you had been convicted of a felony

11  in Superior Court?

12         THE DEFENDANT:  Yes.

13         THE MAGISTRATE JUDGE:  This summary of the

14  offense, I assume you had a chance to read this over with

15  your lawyer?

16         THE DEFENDANT:  Yes.

17         THE MAGISTRATE JUDGE:  Everything that's

18  contained in here is true?

19         THE DEFENDANT:  Yes.

20         THE MAGISTRATE JUDGE:  Is your plea of guilty,

21  or the plea that you wish to enter, a voluntary plea?  In

22  other words, you're doing this knowing what the plea is

23  and that there's no one forcing you or pressuring you to

24  do this?

25         THE DEFENDANT:  Yes.

1          THE MAGISTRATE JUDGE:  Ms. Kay, would you take

2    Mr. Winslow's plea at this time.

3          THE CLERK:  Anthony D. Winslow, in Criminal Case

4    Number 2006-346, in which you are charged in a one-count

5    indictment for violation of Title 18 of the United States

6    Code, Section 922(g)(1), unlawful possession of a firearm

7    and ammunition by a person convicted of a crime punishable

8    by imprisonment for a term exceeding one year, how do you

9    wish to plead?

10          THE DEFENDANT:  Guilty.

11          THE MAGISTRATE JUDGE:  Kim, have Mr. Winslow

12    date that -- or someone date it.

13          MR. MILES:  Should I have Ms. Hart-Edwards date

14    it as well, Your Honor?  Looks like there's a space for

15    it.

16          THE MAGISTRATE JUDGE:  Well, she can if she

17    wishes.

18          It is the finding of the Court that the

19    Defendant, Anthony D. Williams -- excuse me, Winslow -- is

20    fully competent and capable of entering an informed plea

21    and that his plea of guilty is a knowing and voluntary

22    plea supported by an independent basis of fact containing

23    each of the elements of the offense of which he stands

24    charged.  His plea of guilty therefore will be submitted

25    to Judge Sullivan, and this Court will recommend that

1  Judge Sullivan accept his plea of guilty to the offense.

2           Now, I understand, counsel, that Judge Sullivan

3  has scheduled a sentencing in this case for September

4  the 6th of this year, at 10:30 in the morning, and that

5  pursuant to the agreement between Mr. Winslow and the

6  Government, he will not object to the Government's request

7  that he be held without bond pending sentence to be

8  imposed by Judge Sullivan.

9           MR. MILES:  That's correct, Your Honor.

10           THE MAGISTRATE JUDGE:  Thank you, counsel.

11           MR. MILES:  Your Honor said September 6,

12  at 10:30?

13           THE MAGISTRATE JUDGE:  September 6 at 10:30.

14           MR. MILES:  All right, thank you.

15           THE MAGISTRATE JUDGE:  Nothing further, counsel.

16           MR. MILES:  All right.  Thank you, Your Honor.

17           MS. HART-EDWARDS:  Thank you, Your Honor.

18           THE MAGISTRATE JUDGE:  Ms. Hart-Edwards.

19           (Whereupon, the proceedings were concluded.)

20

21

22

23

24

UNITED STATES OF AMERICA )
                          )     Criminal No. 06-0346
DISTRICT OF COLUMBIA      )

      I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

                                 _____

                                       PAUL R. CUTLER

      I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

                                 _____

                                    BONNIE FURLONG